# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 17CR1687 WQH |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| JOANNA ARAGON RAZO, | |
| Defendant. | |

HAYES, Judge:

The matter before the Court is the motion to suppress evidence and to hold an evidentiary hearing (ECF No. 35) filed by Defendant Joanna Aragon Razo.

**FACTS**

On May 28, 2017, United States Border Patrol Agent Joshua Nations was performing his assigned duties in the Boulevard Station area. When he began his shift, Agent Nations was informed by on-going agents that earlier that morning they had been tracking approximately three suspected illegal aliens south of Old Highway 80 west of Jacumba. Agent Nations positioned himself at a high vantage point to give him a view of an area including Highway 80 west of Jacumba using binoculars to watch for possible illegal smuggling activity.

At approximately 3:10 p.m., Agent Nations saw a black Sport Utility Vehicle (SUV) travel west on Old Highway 80 past the 75 Road and into his view. Agent Nations watched the black SUV slow, make a u-turn, and come to a stop, now facing east. The vehicle stopped in the road at a point approximately 200 yards from the

border. Agent Nations saw two people dressed in dark colored clothing emerged from the brush on the north side of Old Highway 80, sprint across the Highway and enter the vehicle. The black SUV traveled east, back the way it had originally come toward Jacumba. The vehicle traveled around a bend out of sight.

Agent Nations immediately advised other agents in the area on radio of his observations of the black SUV, including the location and direction of travel. Agent Whittemore using a scope from an elevated location saw what he believed was the same SUV observed by Agent Nations, and monitored the black SUV as it traveled towards Jacumba reporting the location on the radio. Agent Whittemore eventually lost sight of the SUV. Agent Crumpton, also using a scope from an elevated location, observed what he believed was the same vehicle traveling through Jacumba reporting the location on the radio. Agent Crumpton heard Agent Nations report his observations that two individuals had come out of the brush and entered the dark SUV. Agent Crumpton lost sight of the SUV as it drove through the city.

Agent Lucatero, who heard the radio reports, saw an SUV matching the description of the vehicle. Agent Lucatero stopped the SUV about one mile north of the U.S./Mexico border within four to five minutes of the initial radio report by Agent Nations. Agent Seitles responded to the vehicle stop and confirmed that the two people sitting in the front seat were United States citizens. Agent Seitles then questioned the two second row passengers regarding their citizenship in English. When neither individual responded, Agent Seitles questioned them in Spanish, and they admitted to being citizens of Mexico with no legal documents permitting their entrance into the United States. Defendant, the driver of the black SUV, was charged in an indictment with two counts of transportation of certain aliens in violation of 8 U.S.C. § 1324.

On September 22, 2017 and September 28, 2017, the Court held an evidentiary hearing. (ECF Nos. 64, 65).

**CONTENTIONS OF THE PARTIES**

Defendant contends that agents did not have reasonable suspicion to stop the

vehicle that she was driving. Defendant asserts that observation of a vehicle stopping in the roadway and picking up two people is not sufficient to rise to a reasonable suspicion that the vehicle was engaged in alien smuggling. Defendant asserts that the observations made by Agent Nations are consistent with innocent conduct in a tourist area.

The Government contends that reasonable suspicion supported the stop of Defendant's SUV. The Government asserts that the totality of the circumstances supported the reasonable suspicion that the vehicle was engaged in criminal activity, including the vehicle's proximity to the border, the sudden u-turn and stop, and the observation of two individuals sprinting to the vehicle.

**ANALYSIS**

"The prohibition of unreasonable searches and seizures extends to seizures of the person, including the brief investigatory stop of a vehicle." *United States v. Rodriguez*, 976 F.2d 592, 594 (9th Cir.1992). An agent may not detain a person without "at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). The agent making the stop must be "aware of specific, articulable facts which, when considered with objective and reasonable inferences, form the basis for *particularized* suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc). The requirement of a particularized suspicion includes an assessment based upon the totality of the circumstances as well as an assessment that arouses "a reasonable suspicion that *the particular person being stopped* has committed or is about to commit a crime." *Montero-Camargo*, 208 F.3d at 1129. "Whether reasonable suspicion exists depends upon the totality of the circumstances surrounding the stop, including 'both the content of information possessed by police and its degree of reliability.'" *United States v. Williams*, 846 F.3d 303, 308 (9th Cir. 2016) (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)).

When a vehicle is stopped in a border area, a number of factors may be considered to determine whether the stop was justified by a reasonable suspicion.

*United States v. Brignoni Ponce*, 422 U.S. 873, 884 (1975). Factors may include proximity to the border, usual traffic patterns on a given road, and the driver's behavior, such as "erratic driving or obvious attempts to evade officers. . . ." *Id*. at 884-85. The vehicle itself may also be considered, such as the size or whether it is one that is often used to transport illegal aliens. *Id*. at 885. Officers may also take into account "information about recent illegal border crossings in the area" and "previous experience with alien traffic." *Id*. "Nevertheless, an officer's "experience does not in itself serve as an independent factor in the reasonable suspicion analysis." *Montero-Camargo*, 208 F.3d at 1131 (internal quotation omitted). Instead, that experience may be used to "furnish the background against which the relevant facts to be assessed (citation omitted), as long as the inferences he draws are objectively reasonable." *Id*.

In this case, significant factors support the reasonable suspicion of the agents that the driver of the black SUV was engaged in criminal activity. The agents were patrolling an area very close to the border watching for alien pick up activity in an area with thick brush and boulders. Agent Nations was advised from the prior shift that they had observed individuals in the brush. Agent Nations took up a position with a view of the border and Old Highway 80. Agent Nations observed the driver of the black SUV traveling west on Old Highway 80 slow down, make a u-turn and come to a stop on the highway. *See Montero-Camargo*, 208 F.3d at1138 (finding a u-turn, in combination with other surrounding circumstances, "may properly be given significant weight" for purposes of determining reasonable suspicion). Agent Nations saw two persons run from the brush and enter the SUV. Agent Nations notified other agents at fixed observation points with scopes who spotted and tracked the black SUV. Within four to five minutes, Agent Lucatero stopped the SUV about one mile north of the U.S./Mexico border based upon his monitoring of the reports of the tracking agents. The Court concludes that the totality of the circumstances presented in this case supports the reasonable suspicion of the agents that the SUV driven by Defendant was engaged in criminal activity.

IT IS HEREBY ORDERED that the motion to suppress evidence (ECF No. 35-1) is denied and the motion to hold an evidentiary hearing (ECF No. 35-2) is granted.

DATED: November 2, 2017

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge